KATHERINE ECKERT, Appellee, v. JOHN H. ECKERT and LILLIAN ECKERT, Appellants.

**Resulting trusts:** EVIDENCE. In this action to establish a resulting trust in real property, the evidence is held to show that plaintiff contributed a portion of the purchase price, not to be treated as a loan, and a trust is declared in her favor to that extent.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

FRIDAY, NOVEMBER 17, 1911.

SUIT in equity to establish a resulting trust in an undivided one-half of certain real estate. There was a decree for the plaintiff, and the defendants appeal. *Modified* and *affirmed*.

*Chester J. Eller*, for appellants.

*McLaughlin & Shankland*, for appellee.

EVANS, J.—The plaintiff is the mother of the defendant. The mother is seventy-five years old, and the defendant is forty-five. The defendant never married until within a few months before this controversy arose. For nearly forty-five years, the mother and son lived together and had but one purse. The mother was widowed when her boy was but three years old. They lived at that time in Kansas City, and continued to live there until 1901, when they moved to Des Moines. In time the boy became

the wage-earner for the family, consisting originally of himself and his mother, and a sister two years older than himself. Since his majority, if we understand the record, the son was the only wage-earner of the family. The mother carried the purse. The son brought all his wages to her, and they constituted the only resources of both. Both were industrious and frugal. While in Kansas City, savings were accumulated out of the boy's wages to the amount of $350, and were lost by a bank failure. After that time the mother kept the further savings in her own custody. In the fall of 1901, they moved to Des Moines; the son obtaining employment here. Shortly after their arrival, the son bargained with one Rundberg for his equity in the real estate in controversy. It consisted of an acre and a half of ground, with a small house thereon. Rundberg held the same by contract only; the legal title being in one Mary Thornton. The consideration to be paid consisted of $190 to be paid to Rundberg, $471 to be paid to the Jewett Company on account for building material, and $750 to be paid to Mary Thornton. The first payment consisted of $50. This was followed by two other payments of $200 and $350, respectively. Some other payments appear to have been made before the title was taken, but the record before us does not disclose what they were. In April, 1902, title was conveyed by Mary Thornton to the defendant John H. Eckert, and a mortgage back for the balance of the purchase money was executed by Eckert. It is stated in the appellee's brief that the amount of the purchase-money mortgage was $205, but we are unable to determine the fact in any other way upon the record. Of the money paid prior to April, 1902, $350 was money received by the plaintiff from the sale of the late home in Kansas City. The other payments were all made out of the savings from the defendant's earnings. After April, 1902, both mother and son occupied the home together. In the course of three or four years, the purchase-money mortgage was paid off

out of the earnings of the defendant, and the proceeds of fruit sold from the property. The living expenses also came from the same sources. The parties lived together upon the premises harmoniously and affectionately until the defendant was married in the fall of 1907. The mother left the place in March, 1908, and went to live with her married daughter nearby. There appears to have been no particular reason for her leaving, except the lack of congeniality between herself and the defendant's wife. The silence of the defendant's wife became intolerable to her. She now proposes to make her home with her daughter for the rest of her days. Her son-in-law very properly instituted an inquiry as to her rights in the property in controversy, and this suit is the result.

It is the contention on behalf of the plaintiff that she contributed one-half of the price to the purchase of the premises, and that, inasmuch as the title was taken in the name of the defendant alone, he should be deemed to hold the title to the undivided half thereof in resulting trust for the plaintiff. The rule of law applicable in such a case is a familiar one, and the parties have no dispute over it. The contention of the defendant is that he purchased the property upon his own initiative and as his own property, and that the money used in payment thereof was his money. He concedes that he received from his mother the $350 proceeds of the sale of the Kansas City home, but contends that he has more than repaid the same out of his wages, all of which continued to come into his mother's hands after the occupancy of the premises, as well as before. The learned trial judge declared a trust in favor of the plaintiff to the extent of one-half the property. The case is a trying one. It is difficult to deal with it coldly. It is a pitiful tale that the mutual loyalty and affection of forty-five years between mother and son should become the wreckage of a lawsuit. If the harmony could have continued, then both could have had the full enjoyment

of all the property, and the survivor could have justly taken the whole in the end. As it is, the division of the property reduces 'both to poverty, and perhaps to debt. Viewing the case judicially, we think it must be said that the mother always recognized the savings out of her son's earnings as belonging to him, and that she returned the same to him as such, for the purpose of the payments upon the place. There was no definite arrangement between them. The savings lost by the bank failure were on deposit in his name. The mother was evidently as much concerned for the interests of her son, as she was for herself, and neither had foreseen the cloud. She was industrious and self-denying, and efficient and frugal. The same may be fairly said of the son. To their credit, they each mutually concede these qualities to each other. The plaintiff's testimony discloses that she deemed herself as keeping house for her son.

We think, also, that it should be held that the plaintiff did contribute $350 to the purchase price, and this should not be deemed a loan. To that extent, a resulting trust should be declared in her favor. Her petition alleges that the property cost approximately $1,500. The only items we find in the record are those already enumerated, which amount in round numbers to $1,400. On this basis, she contributed one-fourth of the purchase price.

The decree entered below will be modified so as to declare a resulting trust in her favor as to the undivided one-fourth of the premises. Let each party pay one-half of the costs of this court.

*Modified* and *affirmed*.